IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


FORTCHUNATUS GOODE WAYNE, IV, )
           )
      Plaintiff, )
           )
   vs.       )
           )
CAROLYN W. COLVIN, Acting  )
Commissioner of Social Security,  )
           )  No. 1:14-cv-0008-HRH
      Defendant. )
_____)

O R D E R

   This is an action for judicial review of the denial of disability benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff has timely filed his opening

brief,[1] to which defendant has responded.[2] Oral argument was not requested and is not

deemed necessary.

Procedural Background

   Plaintiff is Fortchunatus Goode Wayne, IV. Defendant is Carolyn W. Colvin, acting

Commissioner of Social Security.

_____

   [1]Docket No. 12.

   [2]Docket No. 14.

On February 17, 2012, plaintiff filed an application for benefits under Title XVI of the Social Security Act. Plaintiff alleged that he became disabled on October 1, 2008. Plaintiff alleged that he was disabled because of hip and back problems, an inter-modular rod in left femur, and spine problems. Plaintiff's application was denied initially and upon reconsideration. After a hearing on May 14, 2013, an administrative law judge (ALJ) denied plaintiff's claim. On April 14, 2014, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's June 19, 2013 decision the final decision of the Commissioner. On June 13, 2014, plaintiff commenced this action in which he asks the court to remand this matter for further proceedings.

## General Background

Plaintiff was born on July 1, 1974. He was 39 years old at the time of the hearing. Plaintiff completed the 11th grade. Plaintiff was hit by a car when he was 17 years old and fractured his femur and broke his right clavicle.[3] Plaintiff has worked as a dishwasher, janitor, boat cleaner, salvage worker, kitchen helper, fur cutter, and commercial fisherman.

## The ALJ's Decision

The ALJ applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 272.

[4]The five steps are as follows:

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since February 8, 2012, the application date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: chronic cervical sprain; chronic lumbosacral strain; advanced osteoarthritis of the hip; obesity; a depressive disorder; reading disorder; and personality disorder...."[6]

---

[4](...continued)

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 25.

[6]Admin. Rec. at 25.

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[7] The ALJ considered Listing 1.04 (disorders of the spine); Listing 12.04 (affective disorders); Listing 12.05 (intellectual disability); and Listing 12.08 (personality disorders).[8] The ALJ considered the "paragraph B" criteria and found that plaintiff had moderate restriction in his activities of daily living; moderate difficulties with social functioning; mild difficulties with regard to concentration, persistence, or pace; and had no episodes of decompensation.[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff

> has the residual capacity to perform medium work as defined in 20 CFR 416.967(c) except claimant is allowed to alternate sitting and standing positions every 2 hours for 5 to 10 minutes. In addition, claimant cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Claimant balances using a hand held device in the form of a walking stick. He must avoid concentrated exposure to extreme cold and excessive

---

[7]Admin. Rec. at 25.

[8]Admin. Rec. at 25.

[9]Admin. Rec. at 25-26.

vibration.  Claimant is limited to only occasional interaction with the public and occasional interaction with co-workers.[10]

The ALJ gave great weight[11] to Dr. Gritzka's[12] opinion.  The ALJ gave little weight to the opinion of the physical therapist[13] "as it is inconsistent with Dr. Hunter's motor

---

[10]Admin. Rec. at 27.

[11]Admin. Rec. at 28.

[12]On May 24, 2011, Thomas L. Gritzka, M.D., an orthopaedic surgeon, examined plaintiff.  Dr. Gritzka opined that

> [o]f the examinee's various injuries, the most significant probably is his right hip.  He has a history consistent with having sustained a right hip dislocation in 1991 with slowly progressive post traumatic degenerative arthritis of the right hip.  The examinee does have impairment with regard to his ability to stand, move about, lift and carry because of his right hip condition.  He has a Trendelenburg gait on the right which is consistent with post traumatic degenerative arthritis of the right hip.  He uses a cane in his right hand to support his right lower extremity.  He gives a history of stair climbing consistent with a chronic right hip condition.  With regard to sitting, the examinee has some low back pain which in the absence of any further studies is to be described as a chronic lumbosacral sprain.  Individuals who have low back pain from whatever cause tend to have difficulty with prolonged sitting.  The examinee has no impairment with regard to handling objects, seeing or speaking.  He was able to travel by air from Sitka to Anchorage for the exam today.

Admin. Rec. at 276.

[13]On May 11, 2013, a physical therapist (the physical therapist's signature is illegible) opined that plaintiff could push/pull 71-86 pounds occasionally, 36-43 pounds frequently,

(continued...)

examination[14] only 2 months prior and the opinion was not rendered by an acceptable

medical source."[15] The ALJ gave some weight[16] to Dr. Morgan's opinion.[17] The ALJ did not

---

[13](...continued)
and 18-22 pounds constantly; could sit for 34-66% of the day but would need a break from sitting every 15-20 minutes; could stand/walk for 1-33% of the day but would need frequent sitting breaks from standing/walking; could bend-reach occasionally but would need frequent breaks from such activities; could do low level activity 1-33% of the day but would need frequent breaks from such activity; could do elevated activity 1-33% of the day but would need frequent breaks from such activity when standing; and could climb stairs occasionally. Admin. Rec. at 331-332. The therapist wrote that plaintiff "is able to perform work activities at [the] level indicated. [He] would need frequent breaks from any functional tasks that involved standing, walking, or low level activity. He could sit for longer periods of time, but would need just a short break every 15-20 minutes." Admin. Rec. at 332.

[14]Robert C. Hunter, M.D., treated plaintiff in 2012 and 2013. Dr. Hunter's September 21, 2012 motor exam "demonstrated no dysfunction grossly." Admin. Rec. at 294. On March 19, 2013, Dr. Hunter's motor exam also "demonstrated no dysfunction grossly." Admin. Rec. at 314.

[15]Admin. Rec. at 28.

[16]Admin. Rec. at 29.

[17]In November 2012, Charles P. Morgan, Ph.D., did an assessment "to evaluate [plaintiff's] intellectual and vocational levels and his current mental health status to make recommendations for vocational training and planning." Admin. Rec. at 284. On February 21, 2013, Dr. Morgan opined that plaintiff was limited in his ability to remember work-like procedures; understand, remember, and carry out simple instructions; make simple work-related decisions; ask simple questions; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places. Admin. Rec. at 319-20. Dr. Morgan opined that plaintiff was seriously limited in his ability to maintain attention for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without

(continued...)

give any weight to the opinion of the vocational rehab evaluator[18] because "it is inconsistent with testing by Dr. Charles M[organ] performed only 2 months later in which claimant's thinking was clear, logical, and organized."[19]

The ALJ found plaintiff's pain and symptom statements less than credible based on his activities of daily living, because he stopped working for reasons "not related to the allegedly disabling impairment(s)", because he worked only sporadically prior to the

---

[17](...continued)
interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; deal with stress of semiskilled and skilled work; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and interact appropriately with the general public. Admin. Rec. at 319-320. Dr. Morgan also opined that plaintiff had moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and had had 1-2 episodes of decompensation. Admin. Rec. at 321. Dr. Morgan opined that plaintiff's mental impairments would result in his being absent from work about 4 days per month and that plaintiff's alcohol or substance abuse did not contribute to his limitations. Admin. Rec. at 322.

[18]On October 2, 2012, Sarah Watkins, the vocational rehab counselor, opined that "[d]ue to his disabilities, [plaintiff] is unable to return to positions that are physically demanding and require extensive standing or sitting. In addition to his physical impairments caused by his disabilities, Mr. Wayne has additional employment barriers. He maintains poor hygiene and has a very offensive odor and unkempt appearance. He occasionally uses marijuana and would not be able to pass a preemployment drug test." Admin. Rec. at 238.

[19]Admin. Rec. at 29.

alleged onset date, and because he "has not taken any narcotic based pain relieving medication in spite of the allegations of quite limiting pain."[20]

At step four, the ALJ found that plaintiff had "no past relevant work...."[21]

At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform...."[22] This finding was based on the testimony of the vocational expert that plaintiff could work as a fish processor or a prep cook.[23]

Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since February 8, 2012, the date the application was filed...."[24]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying

---

[20]Admin. Rec. at 30.

[21]Admin. Rec. at 30.

[22]Admin. Rec. at 30.

[23]Admin. Rec. at 31. Daniel Labrosse testified as the vocational expert at the hearing. Admin. Rec. at 71-82.

[24]Admin. Rec. at 31.

benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred in giving only some weight to Dr. Morgan's opinion. Dr. Morgan opined that plaintiff was limited in his ability to remember work-like procedures; understand, remember, and carry out simple instructions; make simple work-related decisions; ask simple questions; respond appropriately to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; and travel in

unfamiliar places.[25]  Dr. Morgan also opined that plaintiff was seriously limited in his ability to maintain attention for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; deal with stress of semiskilled and skilled work; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and interact appropriately with the general public.[26]  Dr. Morgan also opined that plaintiff had moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and had had 1-2 episodes of decompensation.[27]  And, Dr. Morgan opined that plaintiff's mental

---

[25]Admin. Rec. at 319-320.

[26]Admin. Rec. at 319-320.

[27]Admin. Rec. at 321.

impairments would result in his being absent from work about four days per month and that plaintiff's alcohol or substance abuse did not contribute to his limitations.[28]

Plaintiff contends that Dr. Morgan was a treating physician and that as a treating physician, Dr. Morgan's opinion should have been given great weight. Plaintiff's contention that Dr. Morgan was a treating physician is incorrect. Although Dr. Morgan saw plaintiff on three different occasions in November 2012, all three visits were for the single purpose of "evaluating [plaintiff's] intellectual and vocational levels and his current mental health status to make recommendations for vocational training and planning."[29] Dr. Morgan was an examining physician, not a treating physician. But, that does not change the analysis here. "In order to reject an examining physician's [uncontradicted] opinion, 'the ALJ has to give clear and convincing reasons.... Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.'" Hill v. Astrue, 698 F.3d 1153, 1159-60 (9th Cir. 2012) (quoting Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298–99 (9th Cir. 1999)).

The ALJ gave Dr. Morgan's opinion "some weight" and found that his assessment supported "the limitations of only occasional interaction with the public and occasional

---

[28]Admin. Rec. at 322.

[29]Admin. Rec. at 284.

interaction with co-workers...."[30]  But the ALJ did not explain why she rejected some portions of Dr. Morgan's opinion, such as his opinion that plaintiff would be absent from work at least four days a month or that plaintiff was seriously limited in nine functional categories.  An ALJ may reject a portion of a medical opinion, but the ALJ must provide an explanation for the rejection. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Defendant argues that the ALJ explained throughout her decision why certain limitations found by Dr. Morgan were discounted.  The ALJ noted that despite plaintiff's claims of significant social difficulties, he was cooperative and pleasant throughout his sessions with Dr. Morgan.[31]  Defendant argues that an inconsistency between a doctor's responses to questions and that doctor's medical records is a valid reason to discount a doctor's opinion. Thus, defendant argues that the ALJ reasonably discounted Dr. Morgan's opinion that plaintiff had marked difficulties with social functioning.  Defendant also argues that Dr. Morgan's opinion supports the ALJ's finding that plaintiff had only mild limitations in concentration, persistence, and pace because Dr. Morgan noted that plaintiff's "thinking and speech were clear, logical, and organized[.]"[32] Defendant suggests that this finding is inconsistent with Dr. Morgan's opinion that plaintiff had moderate difficulties

_____

[30]Admin. Rec. at 29.

[31]Admin. Rec. at 29.

[32]Admin. Rec. at 290.

in maintaining concentration, persistence, or pace; and thus, the ALJ reasonably rejected that opinion.

Defendant's arguments are post hoc rationalization. "Longstanding principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225. The ALJ did not explain why she discounted Dr. Morgan's opinion or why she was rejecting portions of his opinion, and the court cannot attempt to guess why she might have done so.

The ALJ erred in failing to explain why she rejected portions of Dr Morgan's opinion. This error was not harmless. "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity[.]" Treichler v. Comm'r of Social Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted). Had the ALJ accepted Dr. Morgan's opinion in its entirety, her RFC assessment would have included additional limitations, limitations which would have resulted in a finding that plaintiff was disabled.

Plaintiff next argues that the ALJ failed to adequately develop the record as to his physical impairments. "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"

<u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996)). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" <u>Id.</u> (quoting <u>Smolen</u>, 80 F.3d at 1288). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." <u>Id.</u>

The ALJ noted that "Dr. Gritzka felt [plaintiff] did have impairment with the ability to stand and move about due to his right hip" and the ALJ gave Dr. Gritzka's opinion great weight.[33] Plaintiff argues that Dr. Gritzka's opinion about his ability to stand and move about was vague and ambiguous and if the ALJ were going to rely on this opinion, the ALJ had a duty to clarify exactly what limitations Dr. Gritzka believed plaintiff had in terms of standing and moving about.

Defendant argues that the ALJ did not have to develop the record more fully as to Dr. Gritzka's opinion. Defendant points out that Dr. Gritzka's examination showed that plaintiff had normal lumbar tone, an ability to walk on his tiptoes and heels, and full strength in his lower extremities despite some atrophy in the right thigh.[34] Defendant

---

[33]Admin. Rec. at 28.

[34]Admin. Rec. at 274.

argues that the ALJ accepted these findings and Dr. Gritzka's opinion that plaintiff would have some difficulty with standing and moving about and then reasonably limited plaintiff to a reduced range of medium exertional work that allowed him to use a hand held device for balancing. Defendant argues that it is the ALJ's job to interpret the evidence and the evidence is not "vague" just because plaintiff has an alternative interpretation.

But even if Dr. Gritzka's opinion were vague, defendant contends that the duty to develop is not triggered by one vague opinion, but rather only if the record as a whole is ambiguous. This contention is, however, incorrect. "An ALJ's duty to develop the record further is triggered ... when there is ambiguous evidence <u>or</u> when the record is inadequate to allow for proper evaluation of the evidence." <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001) (emphasis added).

Dr. Gritzka's opinion was ambiguous because he did not specifically state what limitations plaintiff had. Because the ALJ decided to give this opinion great weight, the ALJ had a duty to find out exactly what functional limitations Dr. Gritzka thought plaintiff had as to standing and moving about. The ALJ erred in failing to fully develop the record as to plaintiff's physical limitations.

Defendant argues that this error was harmless. Defendant contends that plaintiff's argument is premised on the belief that if Dr. Gritzka had been asked to clarify his opinion, he would have endorsed greater limitations. But, defendant argues that there is nothing

in the record to support this premise, primarily because Dr. Gritzka's examination supported the ALJ's RFC assessment as did Dr. Hunter's. Defendant points out that Dr. Hunter found that plaintiff "had surprisingly good" range of motion in his right hip and "surprisingly good" range of motion in his back, despite his advanced osteoarthritis and degenerative disease.[35] Dr. Hunter's motor exam also showed that plaintiff had "no dysfunction grossly."[36] Thus, defendant argues that the ALJ's RFC assessment would have been the same even if she had submitted additional questions to Dr. Gritzka.

This is pure speculation on defendant's part. Because the ALJ did not fully develop the record as to Dr. Gritzka's opinion, it is not possible to discern exactly what limitations Dr. Gritzka believed plaintiff had. The ALJ's error here was not harmless.

Plaintiff next argues that the ALJ erred as to the opinion of the physical therapist. On May 11, 2013, a physical therapist opined that plaintiff could push/pull 71-86 pounds occasionally, 36-43 pounds frequently, and 18-22 pounds constantly; could sit for 34-66% of the day but would need a break from sitting every 15-20 minutes; could stand/walk for 1-33% of the day but would need frequent sitting breaks from standing/walking; could bend-reach occasionally but would need frequent breaks from such activities; could do low level activity 1-33% of the day but would need frequent breaks from low level activity;

---

[35]Admin. Rec. at 295.

[36]Admin. Rec. at 294.

could do elevated activity 1-33% of the day but would need frequent breaks from elevated activity when standing; and could climb stairs occasionally.[37] The therapist wrote that plaintiff "is able to perform work activities at [the] level indicated. [He] would need frequent breaks from any functional tasks that involved standing, walking, or low level activity. He could sit for longer periods of time, but would need just a short break every 15-20 minutes."[38]

The ALJ gave this opinion "little weight as it is inconsistent with Dr. Hunter's motor examination only 2 months prior...."[39] Physical therapists are not acceptable medical sources, but rather are "other sources." 20 C.F.R. § 404.1513(d)(1). "The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)).

As the ALJ noted, when plaintiff was examined by Dr. Hunter, plaintiff "demonstrated no dysfunction on motor examination although his gait and stance were abnormal."[40] But, the ALJ did not mention that Dr. Hunter opined that plaintiff would

---

[37]Admin. Rec. at 331-332.

[38]Admin. Rec. at 332.

[39]Admin. Rec. at 28.

[40]Admin. Rec. at 28.

"benefit from a formal PT consultation for more formal evaluation of physical limitations."[41]  This indicates that Dr. Hunter did not feel that his opinion as to functional limitations was sufficient and thus an evaluation by a physical therapist was in order. Because Dr. Hunter had suggested that plaintiff have an evaluation by a physical therapist, it was error for the ALJ to reject that therapist's opinion on the sole basis that it was inconsistent with Dr. Hunter's examination.

Finally, plaintiff argues that the ALJ erred in finding his pain and symptom statements less than credible.  "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'"  Id. (quoting Smolen, 80 F.3d at 1282).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  Id. (quoting Smolen, 80 F.3d at 1282).  "If the

_____

[41]Admin. Rec. at 295.

claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina, 674 F.3d at 1112 (quoting Turner, 613 F.3d at 1224 n.3). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]" Id. at 1112-13 (internal citations omitted). "Even where those activities suggest some difficulty [in] functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113.

The ALJ found plaintiff's pain and symptom statements less than credible based on his activities of daily living, because he stopped working for reasons "not related to the allegedly disabling impairment(s)"; because he worked only sporadically prior to the alleged onset date; and because he "has not taken any narcotic based pain relieving medications in spite of the allegations of quite limiting pain."[42]

Plaintiff argues that the ALJ should have considered his use of a cane or walking stick when assessing his credibility. Plaintiff seems to be suggesting that the fact that he used a cane to help relieve his symptoms made his statements more credible. But, the court can only review "the reasons provided by the ALJ in the disability determination...." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). The issue here is whether the reasons the ALJ gave for finding plaintiff's statements less than credible were clear and convincing, not whether there was other evidence on which the ALJ could have relied.

The ALJ properly found plaintiff's statements less than credible based on plaintiff's daily activities. The ALJ noted that plaintiff reported that he could walk one mile, perform general housework, shop three times a week, take out the garbage, wash windows, and go to the state park.[43] The ALJ found that these activities were "inconsistent with an

---

[42]Admin. Rec. at 29-30.

[43]Admin. Rec. at 29.

individual whose symptoms are unrelenting and wholly unresponsive to treatment."[44]

"Inconsistencies between a claimant's testimony and the claimant's reported activities

provide a valid reason for an adverse credibility determination." Burrell v. Colvin, 775

F.3d 1133, 1137 (9th Cir. 2014). The ALJ explained "which daily activities [those listed

above] conflicted with which part of [plaintiff's] testimony [that his pain was unrelenting

and unresponsive to treatment]." Id. at 1138. Thus, this was a clear and convincing reason

to find plaintiff's statements less than credible.

   The second reason given by the ALJ, that plaintiff stopped working for reasons "not

related to the allegedly disabling impairment", was also a convincing reason. The ALJ may

properly consider the reason why a claimant stopped working when evaluating credibility.

Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff acknowledged that he left

his last job because the company closed[45] and plaintiff also told Sarah Watkins, the VR

counselor, in October 2012, that he "was laid off" from his last job "when the restaurant

changed owners."[46]

   The ALJ also properly found plaintiff's statements less than credible because

plaintiff did not take narcotic based pain medication. SSR 96-7p provides that "the

---

[44]Admin. Rec. at 29.

[45]Admin. Rec. at 196.

[46]Admin. Rec. at 238.

adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide[.]" The ALJ considered both reasons given by plaintiff for not taking pain medication. Plaintiff testified that he did not "care for chemical medications"[47] and that he could not afford some medical treatment.[48] The ALJ properly disregarded these reasons because plaintiff was taking three prescription medications for his hypertension[49] and because "[a]lthough [plaintiff] testified that he cannot afford medical care, the evidence shows that he recently sought care."[50]

As for plaintiff's poor work history, this was not a convincing reason for finding plaintiff's statements less than credible. The ALJ may properly consider a claimant's poor work history when assessing credibility because a poor work history may demonstrate little propensity to work, which will negatively affect a claimant's credibility regarding an inability to work. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Plaintiff's earning records do show that he had no income between 2000 and 2004 and no income between

---

[47] Admin. Rec. at 63.

[48] Admin. Rec. at 63-64.

[49] Admin. Rec. at 68-69.

[50] Admin. Rec. at 30.

2008 and 2012.[51] But, plaintiff explained at the hearing why he had no income during some of these time periods. This error was harmless, however, because the other reasons given by the ALJ for finding plaintiff's statements less than credible were clear and convincing. Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Generally, when an ALJ has erred in rejecting the opinion of an examining physician, such as the ALJ did here, the question for the court is whether to remand the case for further proceedings or whether to remand the case for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. Here, plaintiff only requested a remand for further proceedings, presumably because there is no testimony from the vocational expert stating that there would be no work for a person with the limitations found by Dr. Morgan. But in Benecke, the court "clarif[ied] that in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is

---

[51]Admin. Rec. at 189.

appropriate." Id. at 595. It is clear that the limitations found by Dr. Morgan would preclude plaintiff from performing any gainful employment. Thus, "remand for further administrative proceedings" would "serve[] no useful purpose and is unwarranted." Id. at 596. Rather, a remand for an award of benefits is appropriate in this unusual case.

## Conclusion

Based on the foregoing, the Commissioner's decision is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 25th day of February, 2015.

/s/ H. Russel Holland
United States District Judge